IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ATLAS AIR, INC. and SOUTHERN AIR INC., <br><br> Plaintiffs, <br><br> v. <br><br> INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION <br><br> and <br><br> AIRLINE PROFESSIONALS ASSOC. OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 1224 <br><br> and <br><br> INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 2750, <br><br> Defendants. | Civil Action No. 1:19-cv-03223-CRC |

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT
OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to L. Cv. R. 7(h)(1), and in support of their Motion for Summary Judgment against Defendants International Brotherhood of Teamsters, Airline Division ("IBT Airline Division"), the Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 1224 ("Local 1224"), and International Brotherhood of Teamsters Local 2750 ("Local 2750") (collectively, "Defendants" or the "Union"), plaintiffs Atlas Air, Inc. ("Atlas") and Southern Air Inc. ("Southern") submit the following material facts as to which there is no genuine dispute:

**The Merger of Atlas and Southern**

1. Atlas and Southern are both commercial air carriers with national and international operations.  (Declaration of Jeffrey D. Carlson ("Carlson Decl.") ¶ 1.)

2. The National Mediation Board has certified the IBT Airline Division as the collective bargaining representative of both the Atlas and Southern pilots under the RLA.  (*Id.* ¶ 2.)

3. Local 1224 is the local collective bargaining agent designated by the IBT Airline Division to represent the Southern pilots and manage day-to-day pilot labor relations with Southern.  (*Id.* ¶ 2.)

4. On October 11, 2019, Defendant Local 2750 was chartered by the International Brotherhood of Teamsters as the designated representative of Atlas pilots.  *See* Ex. 1 to Pls. Airline Professionals Ass'n of the Int'l Bhd. of Teamsters, Local Un. No. 1224's Mot. to Be Dropped as a Pl. and to Substitute Newly Chartered Local Un. 2750 as a Pl., *Int'l Bhd. of Teamsters, Airline Division v. Atlas Air, Inc.*, 1:19-cv-02723-CRC, Dkt. 8 (D.D.C. Oct. 22, 2019).

5. Local 2750 is temporarily headquartered at IBT Local 100's headquarters in Cincinnati, Ohio.  (*Id.*)

6. Prior to October 11, 2019, Defendant Local 1224 was designated as the representative of both the Atlas pilots and the Southern pilots.  (*Id.*)

7. Atlas and the Union are parties to a CBA (the "Atlas CBA"), effective September 8, 2011, that governs the rates of pay, rules, and working conditions of Atlas pilots.  (Carlson Decl. ¶ 3, Ex. 1.)

2

8.Similarly, Southern and the Union are parties to a CBA (the "Southern CBA"), effective November 6, 2012, that governs the rates of pay, rules, and working conditions of Southern pilots. (*Id.* ¶ 4, Ex. 2.)

9.The Atlas and Southern CBAs became amendable on September 8, 2016 and November 6, 2016 respectively. (*Id.* ¶ 3, Ex. 1 at § 34; *Id.* ¶ 4, Ex. 2 at § 27.)

10.Atlas is a wholly-owned subsidiary of Atlas Air Worldwide Holdings, Inc. ("AAWW"). (*See* Declaration of Rachel S. Janger ("Janger Decl.") ¶ 7, Ex. 12 at 1.)

11.On January 19, 2016, AAWW issued a press release announcing that it intended to acquire Southern Air Holdings, Inc., the corporate parent of Worldwide Air Logistics Group, Inc., which in turn owned Southern. (*See* Janger Decl. ¶ 7, Ex. 12 at 1.)

12.On April 7, 2016, AAWW's acquisition of Southern Air Holdings, Inc. became effective, and Southern is also a wholly-owned subsidiary of AAWW. (Janger Decl. ¶ 7, Ex. 12 at 10.)

**The Union's Refusal to Comply With the Provisions of the Atlas and Southern CBAs.**

13.Both the Atlas and Southern CBAs provide a negotiation and interest arbitration process for formulating the terms of a JCBA to govern the combined group of pilots of the carriers in the event of a merger. (Carlson Decl. ¶ 3, Ex. 1 at § 1.F.2; *Id.* ¶ 4, Ex. 2 at § 1.B.)

14.Section 1.F.2 of the Atlas CBA provides that:

> 2.In the event (i) the Company acquires another air carrier and the Company decides there will be a complete operational merger between the Company and such other air carrier, or if the Company notifies the Union of its intent to integrate the Crewmember seniority lists of the respective carriers, or (ii) in the event the Company decides there will be a complete operational merger between the Company and an affiliated air carrier, or if the Company notifies the Union of its intent to integrate the Crewmember seniority lists of the Company and an affiliated air carrier, the following shall apply:
> …

3

> a. Seniority List Integration:
>> i. If the Union represents the Crewmembers of the carrier to be merged with the Company then the Union's Merger Policy shall be utilized to integrate the two seniority lists.
>
> …
>
> b.   Collective Bargaining Agreements:
>
> …
>
> iii. [i]f the crewmembers of the acquired carrier are represented by the Union, then the parties shall on a timely basis begin negotiations to merge the two pre-integration collective bargaining agreements into one agreement. If a merged agreement has not been executed within nine (9) months from the date that the Union presents to the Company a merged seniority list that complies with the provisions of this paragraph F. 2, the parties shall jointly submit the outstanding issues to binding interest arbitration.

(Carlson Decl. ¶ 3, Ex. 1 at § 1.F.2.)

15. Similarly, Section 1.B.3 of the Southern CBA provides that:

> 3.   In the event of a merger, this Agreement shall be merged with the merging air carrier's crewmember collective bargaining agreement, if any; if such merged agreement is not completed within nine (9) months from the date an integrated Master Seniority List is submitted to the surviving entity, the parties shall submit all outstanding issues to binding interest arbitration.

(Carlson Decl. ¶ 4, Ex. 2 at § 1.B.)

16. After Atlas announced that it intended to implement a complete operational merger with Southern and to integrate the crewmember seniority lists, the Union took the position that Section 1.F and Section 1.B.3 of the respective CBAs do not apply, and refused to bargain for a JCBA or provide the ISL that would start the nine-month clock for negotiation prior to any necessary interest arbitration. (*See* Janger Decl. ¶ 6, Ex. 11 at 2; Janger Decl. ¶ 7, Ex. 12 at 2.)

17. Atlas and Southern took the contrary position that the Merger Provisions have been triggered. (*See* Janger Decl. ¶ 6, Ex. 11 at 2; Janger Decl. ¶ 7, Ex. 12 at 2.)

4

18.     Therefore, in order to resolve this dispute over the interpretation and application of the CBAs, Atlas filed a management grievance under the Atlas CBA on April 14, 2016, and Southern filed a management grievance under the Southern CBA on January 24, 2017.  *See Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 293 F. Supp. 3d 457, 463-64 (S.D.N.Y. 2018).

19.     The Union claimed these grievances were not arbitrable and refused to submit them to arbitration, causing Atlas and Southern to file a federal court lawsuit on February 7, 2017 to compel arbitration.  *See Atlas Air, Inc.*, 293 F. Supp. 3d at 464-65.

20.     On March 13, 2018, Judge Forrest of the U.S. District Court for the Southern District of New York issued an opinion and order rejecting the Union's arguments and granting the carriers' motion for summary judgment, concluding that the Union's refusal to arbitrate violated the RLA, and compelling arbitration of both management grievances.  *See Atlas Air, Inc.*, 293 F. Supp. 3d at 457.

21.     The IBT's appeal from that ruling is pending before the U.S. Court of Appeals for the Second Circuit.  *See* Notice of Appeal, *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 17-cv-903-KBF, Dkt. 64 (S.D.N.Y. Apr. 12, 2018).

**The Atlas and Southern Management Grievance Arbitrations**

22.     Southern's grievance was heard in October 2018 before the Southern System Board of Adjustment chaired by Neutral Arbitrator Richard I. Bloch.  (*See* Janger Decl. ¶ 6, Ex. 11 at 3 n.5.)

23.     Southern and the Union participated in three days of hearing and both submitted extensive post-hearing briefs.  (*See* Janger Decl. ¶ 6, Ex. 11 at 3 n.5; Janger Decl. ¶ 4, Exs. 7, 8.)

24.     Arbitrator Bloch issued a ruling on June 12, 2019 in favor of Southern on all issues.  (*See* Janger Decl. ¶ 6, Ex. 11.)

25. In his ruling, Arbitrator Bloch concluded the Union violated its obligations under Section 1.B of the Southern CBA to provide Southern an ISL and to negotiate (and interest arbitrate if necessary) for a JCBA. (*See* Janger Decl. ¶ 6, Ex. 11.)

26. To remedy this violation, and in light of the over three-years' delay, Arbitrator Bloch ordered that the Union produce an ISL within 45 days so the parties could begin the JCBA negotiation process contemplated by Section 1.B. (*See* Janger Decl. ¶ 6, Ex. 11 at 23.)

27. Arbitrator Bloch found this remedy was necessary to remedy the "delay inspired by the Union's misapprehension of the contractual requirements" and concluded the Union "must now respond vigorously to the Company's request to proceed." (*See* Janger Decl. ¶ 6, Ex. 11 at 23.)

28. Pursuant to Arbitrator Bloch's Award, the Union was required to deliver the ISL to Southern by July 27, 2019. (*See* Janger Decl. ¶ 6, Ex. 11 at 23.)

29. Atlas' grievance was heard before the Atlas System Board of Adjustment chaired by Neutral Arbitrator George Nicolau also in October 2018. (*See* Janger Decl. ¶ 7, Ex. 12 at 3.)

30. The parties participated in three days of hearing and submitted extensive post-hearing briefing. (*See* Janger Decl. ¶ 7, Ex. 12 at 3; Janger Decl. ¶ 5, Exs. 9, 10.)

31. Arbitrator Nicolau came to a similar conclusion as Arbitrator Bloch, holding that the Union had violated Section 1.F of the Atlas CBA by refusing to provide Atlas with an ISL and refusing to engage in the contractually-mandated process for formulation of a JCBA. (*See* Janger Decl. ¶ 7, Ex. 12.)

32. Arbitrator Nicolau's Award, dated August 26, 2019, required the Union to comply with the merger provisions of Section 1.F, including by "promptly submitting an ISL, negotiating

for a JCBA, and submitting unresolved bargaining issues to binding interest arbitration." (*See* Janger Decl. ¶ 7, Ex. 12 at 12.)

33. Arbitrator Nicolau defined "promptly" as 45 days based in part on "the time that has passed since the original announcement" of Atlas' intention to merge the two carriers. (*See* Janger Decl. ¶ 7, Ex. 12 at 12.)

34. Pursuant to Arbitrator Nicolau's Award, the Union was required to deliver the ISL to Atlas by October 10, 2019, thereby starting – no later than October 11, 2019 – the nine-month clock for negotiation of a JCBA prior to any interest arbitration. (*See* Janger Decl. ¶ 7, Ex. 12 at 12.)

35. As of the filing of this Motion – 141 days after issuance of Arbitrator Bloch's Award and 66 days after issuance of Arbitrator Nicolau's Award – the Union has failed to provide the ISL to Atlas or Southern, despite being required to do so by both Awards and written demands from the carriers for submission of an ISL. (*See* Carlson Decl. ¶¶ 5-6.)

36. Instead, on June 28, 2019 and September 11, 2019 respectively, the Union filed complaints to vacate the Southern and Atlas arbitration Awards. *See* Compl., *Int'l Bhd. of Teamsters, Airline Division v. Southern Air, Inc.*, 1:19-cv-01948-CRC, Dkt. 1 (D.D.C. June 28, 2019); *see* Compl., *Int'l Bhd. of Teamsters, Airline Division v. Atlas Air, Inc.*, 1:19-cv-02723-CRC, Dkt. 1 (D.D.C. September 11, 2019).

37. On July 26, 2019 and October 11, 2019 respectively, Southern and Atlas filed motions to dismiss the Union's complaints, which are currently pending. *See* Mem. of Law in Support of Mot. to Dismiss Pls.' Compl. and Pet. to Vacate Arbitration Award, *Int'l Bhd. of Teamsters, Airline Division v. Southern Air, Inc.*, 1:19-cv-01948-CRC, Dkt. 4 (D.D.C. July 26, 2019); Mem. of Law in Support of Mot. to Dismiss Pls.' Compl. and Pet. to Vacate Arbitration

Award, *Int'l Bhd. of Teamsters, Airline Division v. Atlas Air, Inc.*, 1:19-cv-02723-CRC, Dkt. 4 (D.D.C. October 11, 2019).

38. Notably, the Union did not argue in its opening statements or post-hearing briefs to the arbitrators that use of the Allegheny-Mohawk procedures was required to formulate the ISL. (*See* Janger Decl. ¶ 2, Ex. 1 at 59:20-119:17; Janger Decl. ¶ 4, Ex. 8; Janger Decl. ¶ 3, Ex. 4 at 66:22-128:6; Janger Decl. ¶ 5, Ex. 10.)

39. Instead, at the Atlas arbitration hearing, Daniel C. Wells, then-President of Local 1224, which represented both Atlas and Southern pilots at the time, testified that while the IBT Airline Division did not have an applicable "written policy," he was sure that the International Brotherhood of Teamsters, in the past, had used a simple date-of-hire approach to integrate seniority lists, without application of the Allegheny-Mohawk procedures. (*See* Janger Decl. ¶ 3, Ex. 6 at 670:10-21, 671:8-24.)

40. In fact, Mr. Wells testified at the Atlas hearing that there was available to him a "shortcut procedure," whereby the Union could "provide a sort of golden pathway forward that would enable me to bring a lot of those [seniority] procedures together quickly and get it done." (*See* Janger Decl. ¶ 3, Ex. 6 at 710:12-711:10.)

Dated:  October 31, 2019  
        Washington, D.C.

Respectfully submitted,

By:     /s/ Robert A. Siegel     
    Robert A. Siegel  
    (D.C. Bar #1004474)  
    Rachel S. Janger  
    (D.C. Bar #467142)

O'MELVENY & MYERS LLP  
1625 Eye Street, NW  
Washington, D.C. 20006  
Telephone: (202) 383-5300  
Facsimile: (202) 383-5414  
rsiegel@omm.com

rjanger@omm.com

*Attorneys for Plaintiffs Atlas Air, Inc. and Southern Air Inc.*